CITY OF DETROIT v VAVRO

Docket No. 104930. Submitted October 21, 1988, at Detroit. Decided June 19, 1989.

The City of Detroit brought a condemnation action in Wayne Circuit Court seeking to acquire land owned by Robert and Margaret Vavro, Hart Rack Manufacturing, Inc., Tri-County Sales & Leasing and McVe Company for eventual conveyance by the Detroit Economic Development Corporation to Chrysler Corporation for use as the site of a proposed automobile assembly plant. The court, John H. Gillis, Jr., J., entered a judgment in favor of plaintiff. Defendants appealed by leave granted.

The Court of Appeals *held:*

The Supreme Court in a five-to-two decision in *Poletown Neighborhood Council v Detroit,* 410 Mich 616 (1981), has upheld the constitutional validity of those provisions of the Economic Development Corporations Act which allow a municipality to exercise its power of eminent domain to acquire private property for eventual conveyance by that municipality's economic development corporation to a private entity. Although this Court believes the *Poletown* decision to be incorrect, it is constrained by the doctrine of stare decisis to follow *Poletown.*

Affirmed.

1. EMINENT DOMAIN — ECONOMIC DEVELOPMENT CORPORATIONS — PUBLIC PURPOSE.

Condemnation by the City of Detroit of land in the city for eventual conveyance by the Detroit Economic Development Corporation to Chrysler Corporation for construction of an automobile assembly plant on the land was held to be a proper exercise of eminent domain pursuant to the Economic Development Corporations Act as interpreted by the Supreme Court in *Poletown Neighborhood Council v Detroit,* 410 Mich 616 (1981) (MCL 125.1601 *et seq.;* MSA 5.3520[1] *et seq.*).

REFERENCES

Am Jur 2d, Courts §§ 183-187; Eminent Domain §§ 25 *et seq.*
See the Index to Annotations under Eminent Domain; Precedents.

2. COURTS — STARE DECISIS — COURT OF APPEALS — SUPREME COURT.
   The Court of Appeals is bound by the rule of stare decisis to
   follow decisions of the Michigan Supreme Court, even where
   the Court of Appeals disagrees with those decisions.

*James C. Cobb, Jr.,* for the City of Detroit.

*Brennan & Burns* (by *Paul E. Burns*), for the Vavros.

*Law Offices of Michael D. Ritenour, P.C.* (by *Michael D. Ritenour*), for Hart Rack Manufacturing, Inc., Tri-County Sales & Leasing and McVe Company.

Before: HOLBROOK, JR., P.J., and SAWYER and J. M. BATZER,* JJ.

SAWYER, J. This case involves the Jefferson/Conner Industrial Revitalization Project under which plaintiff would acquire approximately 380 of the plan's 640 acres of land by purchase or condemnation and transfer the property to Chrysler Corporation for construction of a new automobile assembly plant pursuant to the Economic Development Corporations Act, MCL 125.1601 *et seq.*; MSA 5.3520(1) *et seq.* The trial court entered orders which affirmed the Detroit City Council's determination of necessity and the existence of a public purpose for the project and the use of condemnation and which ordered the property surrendered to plaintiff on January 15, 1988. Defendants now appeal by leave granted and we affirm.

The city council adopted a resolution of necessity on February 18, 1987, finding both the project and the taking necessary and essential to the interest of the public peace, health, safety and welfare in order to provide and maintain jobs and

* Circuit judge, sitting on the Court of Appeals by assignment

assist economic development in Detroit. Plaintiff filed its condemnation action on May 18, 1987, claiming it is authorized and empowered to acquire the property for the Jefferson/Conner Project. Defendants answered on June 22, 1987, claiming that the intended use of the property was private, that there was no public necessity for the project or this taking, that there was not an adequate hearing on the necessity, that the necessity proceeding was held without notice, and that the purchase offers were not made in good faith.

On appeal, defendants raise several attacks to the condemnation action. We believe, however, that the essential question involved in this matter is whether plaintiff can use its power of eminent domain to take the property from defendants and transfer it to Chrysler Corporation, a private entity. Defendants argue that the use of the power of eminent domain to transfer property from one private entity to another is an abuse of power which should not be permitted by the courts. While we agree with defendants that the use of the power of eminent domain by plaintiff in the case at bar, as well as in other similar situations, is unconscionable, the doctrine of stare decisis constrains us to affirm the decision of the trial court.

The controlling decision in these eminent domain cases is *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981). In *Poletown,* the Supreme Court, by a five-to-two vote, sanctioned the City of Detroit's use of the power of eminent domain to take private property for the purpose of turning that property over to General Motors Corporation for use in the building of an automobile assembly plant through the use of an economic development corporation. In the case at bar, defendants urge us to adopt the dis-

senting opinions of Justices FITZGERALD and RYAN. While we agree with those opinions, the doctrine of stare decisis requires us to follow the majority decisions of the Supreme Court, even when we disagree with them. *Edwards v Clinton Valley Center,* 138 Mich App 312, 313; 360 NW2d 606 (1984).

In his dissent in *Poletown, supra* at 660, Justice RYAN presaged the fallout from the *Poletown* decision:

> My disagreement with my colleagues in the majority, while vigorous, is nonetheless respectful. Vigorous, because I think *the unintended jurisprudential mischief which has been done, if not soon rectified, will have echoing effects far beyond this case,* and respectful because the crushing burden of litigation which this Court must address daily did not afford adequate time for sufficient consideration of the complex constitutional issues involved within the two-week deadline the Court set for itself for submission, consideration, and decision of the case. [Emphasis added.]

Justice RYAN then goes on at length in a well-reasoned, articulate opinion addressing the constitutional invalidity of the majority's decision. A dissenting opinion was also filed by Justice FITZGERALD, who also explained at some length the flaws in the majority's reasoning.

While we shall not endeavor to improve upon the efforts of Justices FITZGERALD and RYAN in assailing this abuse of the power of eminent domain, we do concentrate on this issue in the hope that the Supreme Court will again take the matter up and correct the wrong done in the *Poletown* decision.

In any event, as much as we would wish the Supreme Court to overrule *Poletown,* we are com-

pelled to apply it until the Supreme Court does so. Although defendants in the case at bar attempt to distinguish this case from *Poletown,* we do not believe that such a distinction exists. Defendants argue that *Poletown* does not apply to the case at bar because, in the present case, Chrysler Corporation has not entered into a binding commitment with the City of Detroit to construct the project following the city's use of the power of eminent domain to acquire the property. Defendants argue that, absent such a binding commitment, the use of eminent domain to acquire the property is inappropriate. However, a careful reading of the *Poletown* decision reveals that such a binding commitment is unnecessary in order to allow the city to make use of eminent domain. Justice RYAN, in his dissenting opinion, quoted at length a letter from General Motors to the city which indicates that, in *Poletown,* General Motors had not yet committed itself to the city to engage in the project, but only promised to enter into a mutually satisfactory development agreement upon the city's satisfaction of GM's site criteria requirements. See *Poletown, supra* at 653-654, n 6.

Defendants also raise a number of arguments which take the position that the proper procedures were not followed in this action, either by plaintiff in preparing for the condemnations or by the trial court in the instant proceedings. Specifically, defendants cite the city council's alleged failure to hold a full adversarial hearing with respect to the issue of the necessity for the project, a failure by the city to give notice and an opportunity to be heard by the property owners on the issue of the taking of their property, a failure to comply with the requirements of the Economic Development Corporations Act, a denial by the trial court of a trial by jury on the issue of necessity, as well as a

general due process challenge to the procedures required by statute. Defendants also challenge evidentiary rulings by the trial court and the factual findings of the trial court in granting a directed verdict in favor of plaintiff.[1] Defendants' various claims are without merit and we do not believe it necessary to discuss the arguments in detail. Rather, we believe that defendants' arguments on these issues represent a last-ditch effort to avoid the injustices caused by plaintiff's decision to seize their property for the benefit of Chrysler Corporation. Suffice it to say that while it does not appear that the City of Detroit was particularly concerned with respecting the property rights of defendants, and it did maneuver so as to minimize any effective challenge by defendants, it does appear from the record that the minimum requirements of the statutes and due process considerations were met in this case.

In sum, we believe that plaintiff is permitted to take the defendants' property and turn it over to Chrysler Corporation in light of the decision in *Poletown, supra,* and that the procedures employed in doing so met the minimum legal requirements. However, we do agree with defendants that the *Poletown* decision was incorrect and we urge the Supreme Court to take this matter up and overrule *Poletown* and restore the constitutional protections of private property.

The decision of the circuit court is affirmed. However, the orders of the trial court are stayed for fifty-six days following the entry of this opinion to permit defendants to seek leave to appeal to the Supreme Court. No costs, a question of public importance being involved.

Affirmed.

---

[1] Technically, of course, the trial court could not grant a directed verdict in favor of plaintiff inasmuch as this was a bench trial.