DETROIT EDISON COMPANY v CITY OF DETROIT

Docket No. 155688. Submitted October 18, 1994, at Detroit. Decided
    December 6, 1994, at 9:20 A.M.

Detroit Edison Company brought an action in the Wayne Circuit
    Court against the City of Detroit, seeking reimbursement of the
    costs associated with the relocation of its electrical equipment
    from streets and alleys that were abandoned by the city as part
    of the Jefferson-Connor Industrial Revitalization Project so that
    the land eventually could be transferred to Chrysler Corpora-
    tion for the construction of an automobile assembly plant. On
    stipulated facts, the court, William L. Cahalan, J., granted
    summary disposition for the defendant, finding that utility
    companies are to bear the costs of relocating facilities and
    equipment associated with actions undertaken by a city in
    discharge of its governmental function, that the rehabilitation
    project in question was for a public purpose and the abandon-
    ment of the streets and alleys was a governmental function,
    and that the city's termination of the plaintiff's interest in
    rights of way by the vacation of the streets and alleys did not
    entitle the plaintiff to compensation for extinguishment of a
    property right. The plaintiff appealed.

    The Court of Appeals held:

    1. The rehabilitation project in question was for a public
    purpose. Further, a utility must bear relocation costs if those
    costs are necessitated by a city's discharge of a governmental
    function. Because the land clearance occasioning the vacation
    of the rights of way was necessary for a public purpose, the
    relocation was necessitated by the city's discharge of a govern-
    mental function, and the relocation costs must be borne by the
    utility.

    2. Because the plaintiff's interests in the use of the rights of
    way arose out of a franchise granted by the city, and because
    the franchise made those interests subject to all city ordi-
    nances, restrictions, and regulations, the plaintiff's interests

REFERENCES

Am Jur 2d, Eminent Domain §§ 171, 174, 181, 254.
Eminent domain: restrictive covenant or right to enforcement
    thereof as compensable property right. 4 ALR3d 1137.

were subordinate to those of the defendant. At most, a contractual right to use the city's rights of way was granted to the plaintiff, and, accordingly, the plaintiff had no ownership interest in the streets and alleys that were vacated such as would entitle it to compensation for extinguishment of a property right.

3. The power of a city to abandon streets and alleys arises out of its right to control its streets and alleys, and the power to make such vacation is not dependent on specific statutory authorization contained in the statute creating a particular method of industrial revitalization. The city did not abuse its discretion in deciding to vacate the streets and alleys for this particular project.

Affirmed.

1. PUBLIC UTILITIES — RELOCATION OF UTILITY EQUIPMENT — VACATION OF STREETS — ECONOMIC DEVELOPMENT CORPORATIONS ACT — GOVERNMENTAL FUNCTION.

The costs of relocating equipment owned by an electric utility as the result of a municipality's vacation of streets and alleys for eventual conveyance of the property to a private party for a public purpose, undertaken pursuant to the Economic Development Corporations Act, must be borne by the utility, because vacation of the streets and alleys under those circumstances is an exercise of the city's governmental function (MCL 125.1601 et seq.; MSA 5.3520[1] et seq.).

2. PUBLIC UTILITIES — MUNICIPAL CORPORATIONS — USE OF STREETS AND ALLEYS — RIGHTS OF WAY — OWNERSHIP INTERESTS.

A franchise by a municipal corporation granted to an electric utility permitting the utility to place its facilities and equipment within the municipality subject to the municipality's ordinances and regulations creates a right of way but does not create an ownership interest for which the utility is entitled to compensation if the municipality in the reasonable exercise of its police power decides to terminate the right of way by vacating the street or alley.

*Thomas P. Beagen* and *Peter A. Marquardt,* for the plaintiff.

*Cooper, Fink & Zausmer, P.C.* (by *David H. Fink, Avery K. Williams, Sara D. Lile,* and *Ted Peters*), Special Assistant Corporation Counsel, for the defendant.

Before: CAVANAGH, P.J., and T. G. KAVANAGH* and L. V. BUCCI,** JJ.

PER CURIAM. This case presents the question whether a utility must be reimbursed for the cost of relocating its equipment from within certain public rights of way that were vacated in conjunction with an economic development project.

Plaintiff, the Detroit Edison Company, appeals as of right from an order granting summary disposition in favor of defendant, City of Detroit. Because we conclude that plaintiff was required to bear the cost of the relocation, we affirm.

We take our statement of pertinent facts from the parties' stipulations of fact.

By virtue of a franchise granted to its predecessor-in-interest under the ordinances of the defendant city, plaintiff, a privately owned electric utility, is permitted to place its facilities and equipment within the city's streets and alleys, subject at all times "to the city ordinances and to any and all restrictions and regulations hereinafter imposed." Detroit Revised Ordinances, tit XXI, ch CLXI, § 1 (1886); Detroit Revised Ordinances, tit XXI ch CLXII, § 1 (1889).

The Jefferson-Conner Industrial Revitalization Project is an economic development project undertaken to provide jobs in the city and stabilize its tax base. Central to the project was the construction by Chrysler Corporation of a state-of-the-art automobile assembly plant within the Conner Creek Industrial Corridor. Defendant acquired land for the purpose by condemnation pursuant to the Economic Development Corporations Act (EDCA), MCL 125.1601 *et seq.*; MSA 5.3520(1) *et seq.*

* Former Supreme Court justice, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

Because Chrysler required a "green field" site, it was necessary to vacate certain streets and alleys and remove and relocate the utilities.

From the outset, plaintiff contended that it could not relocate its equipment without some arrangement for payment. Defendant responded that reimbursement would be "in accordance with Michigan Law, and/or as negotiated with the City of Detroit." Plaintiff agreed to relocate its utility equipment on condition that the question of reimbursement be determined by a court of law.

In December 1988, plaintiff filed this lawsuit to recover its relocation costs. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), and the trial court granted the motion on the basis of the stipulated facts. This appeal followed.

Plaintiff's first issue, restated, is whether the condemnation of property for the project was for a public purpose, such that plaintiff should bear the relocation costs.

This Court has previously addressed the question whether the Jefferson-Conner project was for a public purpose. In *Detroit v Vavro,* 177 Mich App 682, 684-685; 442 NW2d 730 (1989), the Court determined that the project was indistinguishable from that involved in *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981), where our Supreme Court sanctioned the city's use of the power of eminent domain to take private property and turn it over to General Motors Corporation for the construction of an automobile assembly plant. The *Vavro* panel disagreed with the *Poletown* opinion, but was constrained by the doctrine of stare decisis to follow that decision and affirm the determination of necessity and of the existence of a public purpose for the Jefferson-Conner project. We agree with the Court in *Vavro* that *Poletown* is controlling. Accordingly, we must

also conclude that the Jefferson-Conner project was for a public purpose.

Relocation costs must be borne by the utility if necessitated by the city's discharge of a governmental function, while the expenses must be borne by the city if necessitated by its discharge of a proprietary function. *Detroit Edison Co v Detroit,* 180 Mich App 145, 148; 446 NW2d 615 (1989), citing *Pontiac v Consumers Power Co,* 101 Mich App 450, 453; 300 NW2d 594 (1980).

Because the land clearance was necessary for a public purpose, and was undertaken pursuant to the EDCA, we conclude that the relocation was necessitated by the city's discharge of a governmental function. *Detroit Edison, supra* at 150-151. Further support for this conclusion may be found in *Detroit v Michigan Bell Telephone Co,* 374 Mich 543, 551; 132 NW2d 660 (1965), where it was stated that urban renewal is a governmental function, even where the cleared area subsequently passes into private hands.

Consequently, the trial court properly determined that plaintiff had no right to reimbursement of its relocation costs.

Plaintiff also argues that it is entitled to compensation for the extinguishment of its property rights in the vacated streets and alleys. We disagree.

This precise issue does not appear to have been addressed in Michigan. Accordingly, we turn to other jurisdictions for guidance.[1] In *New Orleans Gaslight Co v Drainage Comm of New Orleans,*

---

[1] Although the Court in *Center Line v Michigan Bell Telephone Co,* 387 Mich 260; 196 NW2d 144 (1972), considered the question "of a public utility's right to reimbursement costs in relocating its equipment in connection with an urban renewal project," *id.* at 263, the outcome of that case was determined by application of the rehabilitation of blighted areas act, MCL 125.71 *et seq.;* MSA 5.3501 *et seq.,* which is not involved in the instant case.

197 US 453; 25 S Ct 471; 49 L Ed 831 (1905), construction of a municipal drainage system necessitated the relocation of gas pipe lines. The Court held that the utility company was responsible for the relocation costs and was not entitled to compensation. The Court explained:

> The gas company, by its grant from the city, acquired no exclusive right to the location of its pipes in the streets, as chosen by it, under a general grant of authority to use the streets. The city made no contract that the gas company should not be disturbed in the location chosen. In the exercise of the police power of the state, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense, none of the property of the gas company has been taken, and the injury sustained is *damnum absque injuria*. [*Id.* at 462.]

In *Northwest Natural Gas Co v City of Portland,* 300 Or 291; 711 P2d 119 (1985), the Supreme Court of Oregon was presented with the question whether the relocation of utilities necessitated by the construction of a mass transit system constituted a taking that must be compensated under the law of eminent domain. As in the present case, the utilities had been granted by franchise the right to locate their facilities within the public rights of way. The Court reasoned:

> The answer to the contention that the relocation of the utilities constitutes a taking of private property is simple. No private property is being taken by the defendants. The only "property" the utilities acquired by franchise and permit is the right to locate their facilities somewhere in the

public rights-of-way, and to use the rights-of-way to the extent necessary to furnish their respective services to the public. [*Id.* at 311-312.]

The Court held further that a city charter provision stating that a franchise granted under the charter would be deemed property and subject to property tax did not convert the right to use the public rights of way into an ownership interest in the street itself. *Id.* at 312.

Our Supreme Court has held that the rights acquired under a franchise granted to a utility are dependent upon the nature of the original grant and any reservations therein and are subordinate to the rights of the municipality in the reasonable exercise of its police power. *Detroit v Michigan Bell, supra* at 552 (O'HARA, J., dissenting in part). The majority in that case concluded that, under the rehabilitation of blighted areas act, the defendant utilities were not entitled to the reservation of easements in vacated public rights of way and, hence, that the city was not required to pay relocation costs. *Id.* at 562. The Court noted that because no reservation of an easement was required, the refusal to reserve could not be considered extinguishment of the easement. *Id.*

The franchise granted to plaintiff in this case allowed it to use defendant's streets and alleys "subject, however, at all times to the city ordinances and to any and all restrictions and regulations hereinafter imposed." Thus, plaintiff's rights in the streets and alleys were clearly subordinate to those of the defendant city.

We conclude that, under the reasoning of *New Orleans Gaslight, supra,* and *Northwest Natural Gas Co, supra,* plaintiff had, at most, a contractual right to use city rights of way for its own purposes. It had no ownership interest in the particular

streets and alleys that were vacated. See 12 McQuillin, Municipal Corporations (3d ed, 1994 Cum Supp), § 34.74a, p 32; see also *Center Line v Michigan Bell Telephone Co,* 387 Mich 260, 267; 196 NW2d 144 (1972) (SWAINSON, J., dissenting). Plaintiff's franchise remains unimpaired. Because plaintiff's property was not taken, plaintiff was not entitled to compensation.

Finally, plaintiff asserts that the EDCA does not authorize the vacation of public roads.

Regardless of whether plaintiff's assertion is correct, and without deciding whether plaintiff has standing to raise this issue, it is indisputable that a municipality's right to control its streets and alleys includes the power to vacate those streets and alleys. The question of vacation is for the municipality and not for the courts to decide, and it will not be reviewed absent a clear abuse of discretion. *Tomazewski v Palmer Bee Co,* 223 Mich 565; 194 NW 571 (1923); see MCL 117.4h(1); MSA 5.2081(1).

We conclude that the defendant city did not abuse its discretion in deciding to vacate its streets and alleys in furtherance of the Jefferson-Conner revitalization project.

Affirmed.