CITY OF TAYLOR v THE DETROIT EDISON COMPANY

Docket No. 250648. Submitted July 8, 2004, at Detroit. Decided September 14, 2004, at 9:00 A.M.

The city of Taylor brought an action in the Wayne Circuit Court against The Detroit Edison Company, seeking the reimbursement of costs incurred in the removal of the defendant's overhead power lines and their relocation underground during a major reconstruction project along Telegraph Road. Taylor passed an ordinance requiring utilities to remove above-ground facilities and to relocate them underground at the owner's expense. Defendant refused to pay in accord with the ordinance, and the city advanced the costs to the defendant to complete the project. The court, John A. Murphy, J., granted summary disposition for the plaintiff, ordering reimbursement. The defendant appealed, contending that the circuit court had no jurisdiction because the Michigan Public Service Commission (MPSC) has primary jurisdiction, that the ordinance requiring payment by the defendant exceeded the city's right to reasonable control over its public roads and rights-of-way, that the ordinance is preempted by the state statutory scheme including the MPSC regulations, and that the court erred by not allowing factual development related to traffic congestion, amount of reimbursement, and quality of the installation by the city that the defendant was to reimburse.

The Court of Appeals *held*:

1. The MPSC does not have primary jurisdiction in this case. Primary jurisdiction is determined by three factors: (1) the extent to which the agency's specialized knowledge makes it the preferable choice to decide the issue, (2) the need for uniformity in resolution of the issue, and (3) the potential that the decision will have an adverse effect on the agency's performance of its regulatory responsibilities. While administrative agencies have specialized and expert knowledge to address issues of a regulatory nature, this case relates to a question of law regarding a municipality's authority. The desirability of uniformity statewide is achieved without MPSC involvement because the judiciary has uniformly applied the rule that a municipality may require a utility to bear the costs of relocation if the municipality is performing a govern-

mental function. The decision in this case does not throw out of balance the regulatory scheme of the MPSC. The circuit court correctly determined that the MPSC does not have primary jurisdiction in this case.

2. The city did not exceed its right to reasonable control over its public roads and rights-of-way. Local governments retain the right to the reasonable control of their rights-of-way. The general rule is that utility relocation costs may be imposed on the utility if necessitated by the municipality's discharge of a governmental function, but not for a proprietary function. A proprietary function is conducted for the purpose of producing a financial gain for the government agency, over and above taxes and fee revenue. Taylor conducted the project to relieve traffic congestion, to improve traffic safety, to improve utility reliability, and to improve the aesthetics of the area. The project promoted reasonable governmental interests, not a proprietary function. The fact that the defendant allocates the costs of the relocation to people outside Taylor is a business decision of the defendant, not a failure of the ordinance because it would have statewide effect.

3. A municipality is preempted from enacting an ordinance if the ordinance is in direct conflict with the state statutory scheme or, even if there is no direct conflict, if the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter. Four guidelines to determine state preemption are: (1) where state law expressly states its authority to regulate an area is exclusive, (2) where preemption is implied by the legislative history, (3) where the pervasiveness of the regulatory scheme supports preemption, and (4) where the nature of the subject matter demands exclusive state regulation to achieve uniformity needed to serve the state's regulatory purpose. MPSC Rule 460.517 provides that utilities bear the cost of construction of underground facilities where required by ordinance. That rule obviates the state's preemption of the matter. Case law, MPSC Rule 460.517, and the fact that the defendant has failed to demonstrate legislative history in its favor lead to the conclusion that the circuit court did not err in declining to defer to the MPSC.

4. The circuit court did not abuse its discretion in accepting, on the basis of notice, hearings, and significant documentation, the plaintiff's calculation of the amount owed by the defendant. However, the court did fail to hold a fair hearing to consider the defendant's assertion that the conduit installed by the plaintiff was defective and, thus, not reimbursable. Remand is necessary to settle this last issue.

Affirmed in part and remanded for further proceedings.

1. ADMINISTRATIVE LAW — PUBLIC SERVICE COMMISSION — PRIMARY JURISDICTION.

Whether the Public Service Commission has primary jurisdiction over an issue or case is determined by three factors: (1) the extent to which the agency's specialized knowledge makes it the preferable choice to decide the case, (2) the need for uniformity in resolution of the issue, and (3) the potential that a court decision will have an adverse effect on the agency's performance of its regulatory responsibilities.

2. MUNICIPAL CORPORATIONS — GOVERNMENTAL FUNCTION — UTILITY RELOCATION — COSTS.

Local governments retain the right to the reasonable control of their rights-of-way; consequently, the general rule is that utility relocation costs may be imposed on the utility if necessitated by the municipality's discharge of a governmental function, but not a proprietary function.

3. MUNICIPAL CORPORATIONS — ORDINANCES — STATE PREEMPTION.

A municipality is preempted from enacting an ordinance if the ordinance is in direct conflict with a state statutory scheme or, even if there is no direct conflict, if the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter; state preemption may obtain (1) where state law expressly states that its authority to regulate an area is exclusive, (2) where preemption is implied by the legislative history, (3) where the pervasiveness of the regulatory scheme supports preemption, or (4) where the nature of the subject matter demands exclusive state regulation to achieve uniformity needed to serve the state's regulatory purpose.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick B. McCauley* and *Patrick Burkett*), for the plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey, Stephen J. Rhodes,* and *Peter R. Albertins*), *George H. Hathaway,* and *Cummings, McClorey, Davis & Acho, PLC* (by *T. Joseph Seward* and *Karen M. Haapala*), for the defendant.

Before: MURPHY, P.J., and GRIFFIN and WHITE, JJ.

Per Curiam. Defendant appeals as of right the circuit court's order granting plaintiff's cross-motion for summary disposition. We affirm.

This case involves a major reconstruction project along the portion of Telegraph Road passing through the city of Taylor. As part of this project, the Taylor city council passed an ordinance directing all persons owning, leasing, operating, or maintaining overhead lines, wires, poles, or facilities to relocate the facilities underground and to remove all the above-ground facilities. The ordinance stated that the relocation was to be done at the expense of the persons owning, leasing, operating, or maintaining the overhead facilities. Notwithstanding the ordinance, defendant maintained that it was not obliged to pay the costs of the relocation. Plaintiff ultimately advanced a portion of the costs to defendant, reserving its right to litigate the issue. Plaintiff commenced this action seeking to enforce the ordinance and to require defendant to pay for the relocation. The parties filed motions for summary disposition. The court granted plaintiff's motion, denied defendant's, and ordered defendant to reimburse plaintiff.

I

Defendant first contends that the circuit court erred in not deferring to the primary jurisdiction of the Michigan Public Service Commission (MPSC). We disagree. The application of the primary jurisdiction doctrine is a question of law this Court reviews de novo. *Spect Imaging, Inc v Allstate Ins Co*, 246 Mich App 568, 580; 633 NW2d 461 (2001).

"A question of 'primary jurisdiction' arises when a claim may be cognizable in a court but initial resolution of issues within the special competence of an adminis-

trative agency is required." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 197; 631 NW2d 733 (2001), quoting *District of Columbia v Thompson*, 570 A2d 277, 288 (DC App, 1990), rev'd in part on other grounds 593 A2d 621 (DC App, 1991). In such circumstances, the judicial process is suspended pending referral of the issue to the administrative body for its views. *Travelers Ins, supra* at 198. "[T]he doctrine underscores the notion that administrative agencies possess specialized and expert knowledge to address issues of a regulatory nature. Use of an agency's expertise is necessary in regulatory matters in which judges and juries have little familiarity." *Id.* at 198-199. Three main factors govern the applicability of the primary jurisdiction doctrine. The court must consider: (1) the extent to which the agency's specialized knowledge makes it the preferable choice to decide the case; (2) the need for uniformity in resolutions of the issue; and (3) the potential that its decision will have an adverse effect on the agency's performance of its regulatory responsibilities. *Rinaldo's Constr Corp v Michigan Bell Tel Co*, 454 Mich 65, 71; 559 NW2d 647 (1997). We conclude that these factors do not undermine the circuit court's decision to decline to defer to the MPSC in this case.

First, this is not a case in which the MPSC's specialized knowledge would be invoked. The case does not directly involve utility rate structures, licensing, or tariffs. Rather, it presents a question of law regarding a municipality's authority. Although a utility is involved in the case, it is not a situation requiring specialized knowledge, excluding legal knowledge.

The second factor, need for uniformity, does raise a concern. There is a potential that, on the statewide level, utilities may be unsure of a municipality's ability to direct them to move their lines underground at their

own expense. But uniformity can be reached equally well through the judicial process. The courts have uniformly applied the rule that a municipality may require a utility to bear the costs of relocation if the municipality is performing a governmental function. *Detroit Edison Co v Detroit*, 208 Mich App 26, 30; 527 NW2d 9 (1994). Given that uniformity can be, and has been, achieved through the courts, there is no need to defer to the MPSC.

Third, failure to defer to the MPSC will not have an adverse effect on the MPSC's performance of its regulatory duties. This is not a situation in which a pervasive regulatory scheme is thrown out of balance. The ordinance does not conflict with the regulatory scheme. Given that the regulatory scheme of the MPSC is not thrown out of balance, this case does not have a sufficient effect on the MPSC's performance to require deference to it. *Spect Imaging, Inc, supra* at 581.

In sum, the three factors used to decide if a court should defer to an agency's primary jurisdiction do not require that the courts in these circumstances defer to the MPSC, and the circuit court did not err in proceeding with the case.

II

Next, defendant contends that the ordinance passed by plaintiff's city council mandating that defendant relocate its lines and facilities at its own expense exceeds plaintiff's right to reasonable control over its public roads and rights-of-way. We disagree.

A

Local units of government retain the right to the reasonable control of their rights-of-way. Const 1963,

art 7, § 29;[1] *Detroit Edison Co v Detroit*, 332 Mich 348, 354; 51 NW2d 245 (1952); *TCG Detroit v Dearborn*, 261 Mich App 69, 79; 680 NW2d 24 (2004). Where the state occupies the field, the right to reasonable control is subject to the paramount authority of the state, except concerning matters that are "strictly referable" to the reasonable control of the streets. *TCG Detroit, supra* at 91. Here, the state has not purported to occupy the field regarding a municipality's authority over the location of power lines, or the allocation of related costs.[2] Further, this Court has recognized a municipality's right to control the location and route of electric power lines. *Detroit Edison Co v Richmond Twp*, 150 Mich App 40, 47, 50; 388 NW2d 296 (1986).

B

On the issue of relocation costs, this Court has repeatedly articulated a general rule that relocation costs may be imposed on the utility if necessitated by

---

[1] Const 1963, art 7, § 29 provides:

No person, partnership, association or corporation, public or private, *operating a public utility* shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, *without the consent of the duly constituted authority* of the county, township, city or village; *or to transact local business therein without first obtaining a franchise* from the township, city or village. Except as otherwise provided in this constitution, the right of all counties, townships, cities and villages to *the reasonable control* of their highways, streets, alleys and public places *is hereby reserved to such local units of government.* [Emphasis added.]

[2] The instant case differs from *TCG Detroit* in this respect, and we thus find defendant's reliance on the case misplaced. We express no opinion on the result that would obtain were we to conclude that the state had occupied the field.

the municipality's discharge of a governmental function, while the expenses must be borne by the municipality if necessitated by its discharge of a proprietary function. *Detroit Edison Co*, 208 Mich App 30. In *Detroit Edison Co v Detroit*, 332 Mich 348, the Michigan Supreme Court ruled that the city of Detroit could order the utility to move its poles at its own expense under the municipality's constitutional right to control public places. In *Detroit Edison Co v Southeastern Michigan Transportation Auth*, 161 Mich App 28; 410 NW2d 295 (1987), this Court ruled that the installation of the People Mover constituted a governmental function, and, consequently, the utility bore the cost of relocating its facilities and lines. In *Detroit Edison Co v Detroit*, 180 Mich App 145; 446 NW2d 615 (1989), this Court ruled that the expansion of Cobo Hall constituted a governmental function, and, as a result, the utility had to bear the cost of relocating its facilities. And, in *Detroit Edison Co v Detroit*, 208 Mich App 29-30, this Court ruled that the Jefferson/Conner Industrial Revitalization Project constituted a governmental function, that the city undertook the project for a public purpose, and that, therefore, the utility bore the cost of relocation. We must thus determine whether the Telegraph project constituted a governmental or proprietary function.

A proprietary function is defined as any activity conducted for the purpose of producing a pecuniary gain or profit for the governmental agency, excluding any activity normally supported by taxes or fees. *Russell v Dep't of Corrections*, 234 Mich App 135, 138; 592 NW2d 125 (1999). Defendant does not allege that plaintiff is conducting this road improvement for its own financial gain. It is clear from the ordinance that plaintiff is performing a governmental function in attempting to relieve utility and transportation burdens

in the business district. Plaintiff conducted the project not for monetary gain for itself, but to relieve traffic congestion, to improve traffic safety, to improve utility reliability, and to improve the aesthetics of the area. These are governmental, rather than proprietary, concerns. *Russell, supra* at 138; *Detroit Edison Co,* 208 Mich App 30.

Defendant argues that relocation was not "necessary" for the governmental function because the project amounted to a mere beautification project. However, the ordinance contains more than a goal of mere beautification of Telegraph. The ordinance states several reasons for the road improvement such as improvement of infrastructure in the area, including roads, sidewalks, and sewers, relieving utility and transportational burdens, enhancing traffic safety, improving visibility, protecting persons traveling on Telegraph from potentially falling lines, and improving utility reliability. Removal of the overhead utilities for reasons other than beautification was a major objective and component of the project. The goals of improving visibility and reducing the dangers of falling wires and collisions with utility poles involve the relocation of utilities without regard to beautification. Moreover, in the zoning context, this Court has determined that the aesthetic concerns of a municipality to improve its community appearance is a reasonable governmental interest. *Adams Outdoor Advertising, Inc v Holland,* 234 Mich App 681, 692-693; 600 NW2d 339 (1999), aff'd 463 Mich 675; 625 NW2d 377 (2001); *Gannett Outdoor Co of Michigan v Troy,* 156 Mich App 126, 136; 409 NW2d 719 (1986).

Defendant also argues that the ordinance is not reasonable because it requires defendant's customers living outside the area to pay for the improvements, and, thus, its reach extends beyond the confines of the

municipality. However, the ordinance does not purport to address how defendant may allocate or recoup the costs of relocation. Defendant's claim that this ordinance has statewide effect would mean that any local project involving a business or entity with a statewide customer base would have statewide effect. We are not persuaded.

Defendant also raises an issue of Telegraph being a state trunk line highway. This issue was not raised before or presented in the lower court; therefore, it is not properly preserved for appeal. *Kratze v Independent Order of Oddfellows*, 190 Mich App 38, 42; 475 NW2d 405 (1991), rev'd in part on other grounds 442 Mich 136; 500 NW2d 115 (1993); *FMB-First Michigan Bank v Bailey*, 232 Mich App 711, 718; 591 NW2d 676 (1998). Because defendant failed to timely assert this claim, it is generally considered forfeited. *Stein v Braun Engineering*, 245 Mich App 149, 154; 626 NW2d 907 (2001). We observe, nevertheless, that this Court has stated that municipalities " 'maintain reasonable control over state trunk highways located within their boundaries [as] long as that control pertains to local concerns and does not conflict with the paramount jurisdiction of the state highway commission.' " *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 178; 658 NW2d 804 (2002), quoting *Jones v Ypsilanti*, 26 Mich App 574; 182 NW2d 795 (1970).

III

Next, defendant argues that plaintiff's ordinance is preempted. We disagree. A municipality is precluded from enacting an ordinance if (1) the ordinance is in direct conflict with the statutory scheme or (2) the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to

enter, even where no direct conflict exists between the two regulation schemes. *Brighton v Hamburg Twp*, 260 Mich App 345, 350; 677 NW2d 349 (2004), citing *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977). The first concern is not present here because the ordinance is not in direct conflict with the statutory scheme.

Four guidelines are applied to determine if the state has preempted an area for the purpose of regulation: (1) where state law expressly states its authority to regulate an area of law is exclusive; (2) where preemption is implied by the legislative history; (3) where the pervasiveness of the regulatory scheme supports preemption; and (4) where the nature of the regulated subject matter demands exclusive state regulation to achieve the uniformity necessary to serve the state's regulatory purpose. *Brighton, supra* at 351 n 3 (citation omitted).

Under the first consideration, the MPSC's jurisdictional statement does not expressly state that its authority to regulate this area of law is exclusive.

The second consideration does not support preemption. Defendant provides no support for a conclusion that the legislative history supports total preemption of the area by the MPSC.

Third, the pervasiveness of the MPSC regulatory scheme does not support preemption. The language of its own rules clearly allows for municipalities to act in the area. The MPSC's rules contemplate that municipalities will pass ordinances requiring that lines be place underground. MPSC Rule 460.517 states:

> The utility shall bear the cost of construction where electric facilities are placed underground at the option of the utility for its own convenience or *where underground*

*construction is required by ordinance in heavily congested business districts.* [Emphasis added.]

The MPSC's jurisdiction is not pervasive enough to support total preemption where its own rules contemplate that municipalities may issue ordinances in the area. Therefore, the third consideration does not support preemption.

The fourth consideration, where the nature of the regulated subject matter demands exclusive state regulation to achieve the uniformity necessary to serve the states regulatory purpose, also does not support preemption. As discussed, this Court has often and consistently dealt with this area of law. *Detroit Edison Co*, 208 Mich App 26; *Detroit Edison Co*, 161 Mich App 28; *Detroit Edison Co*, 180 Mich App 145. Further, given that the MPSC's own rules contemplate municipal action through ordinance in this area, the need for exclusive state regulation does not appear strong. Given that none of the four considerations weighs toward preemption, the circuit court did not err in declining to defer to the MPSC. *Brighton, supra* at 350-351.

IV

Finally, defendant argues that the circuit court erred in granting summary disposition and not allowing it to answer plaintiff's complaint after the court granted summary disposition. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Glancy v Roseville*, 457 Mich 580, 583; 577 NW2d 897 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim. After the trial court reviews the evidence in a light most favorable to the nonmoving party, it may grant summary disposition if no genuine issue concerning a material fact exists and the moving party is entitled to

judgment as a matter of law. *de Sanchez v State*, 467 Mich 231, 235; 651 NW2d 59 (2002).[3]

A

Defendant states that summary disposition pursuant to MCR 2.116(C)(10) was inappropriate because genuine issues of fact remain. Defendant first claims that there is a genuine issue of fact regarding whether the area was a heavily congested business district. Although this determination would be material if this case were before the MPSC on a challenge to the applicability of MPSC Rule 460.517, it is not material here, where the court did not rely on the rule as a basis for plaintiff's authority. Rather, the court relied on plaintiff's right to the reasonable control of its rights-of-way and case law establishing that a utility may be required to incur the costs of relocation if the municipality is engaged in a governmental function. These were legal issues requiring no further factual development.

B

The remainder of defendant's alleged genuine issues of fact revolve around the monetary award included in the court's order. Defendant basically claims that the award is too high because it cannot use some of the conduit installed by plaintiff. Defendant claims that summary disposition was inappropriate because the circuit court should have allowed it to litigate the conduit's adequacy and the monetary damages to plaintiff. But MCR 2.116(C)(10) specifically states that sum-

---

[3] The circuit court did not state under which subrule it granted summary disposition, but because it relied on documentary evidence submitted, this Court's review is under MCR 2.116(C)(10). *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

mary disposition is appropriate if there are no genuine issues of material fact except those regarding the amount of damages. Therefore, defendant's challenge to the amount of damages awarded by the circuit court is not an issue of material fact making summary disposition pursuant to MCR 2.116(C)(10) inappropriate.

Defendant is really challenging the circuit court's grant of other relief pursuant to MCR 2.605(F). This Court reviews a trial court's decision to grant or deny declaratory relief for an abuse of discretion. *Shuler v Michigan Physicians Mut Liability Co*, 260 Mich App 492, 509; 679 NW2d 106 (2004). MCR 2.605(F) states:

> Other Relief. Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against a party whose rights have been determined by the declaratory judgment.

The court rule contemplates that additional relief may be necessary and proper following entry of a judgment of declaratory relief. *Durant v Michigan*, 456 Mich 175, 209; 566 NW2d 272 (1997). Reasonable notice and a hearing are all that are necessary in order for the court to grant this additional relief. *Id.* at 209-210. Pursuant to MCR 2.605(F), a court has the power to grant money damages as are necessary and proper in a declaratory judgment action. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 90; 535 NW2d 529 (1995).

Defendant received adequate notice of the request for additional relief. First, plaintiff filed a motion for entry of an order, which motion included a motion to grant other monetary relief pursuant to MCR 2.605(F). Plaintiff obviously received this notice because it responded to the motion. Second, defendant received notice at the January 17, 2003, motion hearing. The parties extensively discussed the additional relief and the court ruled that defendant had the right to depose a witness on the

subject and scheduled a further hearing on the issue. Finally, defendant received notice through conducting at least one deposition on the additional relief issue following that motion hearing. Given the multiple and substantial notices given defendant, it received reasonable notice of the additional relief granted. MCR 2.605(F).

Defendant also received an adequate hearing on the issue whether the amount requested properly represented the cost of the work done in defendant's behalf. Defendant deposed and cross-examined plaintiff's witness and had access to numerous documents. The parties returned to court for a hearing at which extensive argument was presented. The court reviewed all the material submitted, including the deposition, before issuing its opinion. We conclude that, with regard to this issue, defendant received a hearing as required by MCR 2.605(F).

Having concluded that defendant received the required notice and hearing, we address whether the court abused its discretion in determining that the additional relief was necessary and proper. We conclude that the court did not abuse its discretion in accepting plaintiff's figures where it had properly granted summary disposition to plaintiff and had concluded, on the basis of significant documentation, that the amount requested was verified and substantiated.

The court did, however, fail to give fair hearing to defendant's assertion that the conduit installed by plaintiff was defective and that, given the interactions and undertaking of the parties during the dispute, defendant should not be required to reimburse plaintiff for the cost of the defective cable even though the court had found the ordinance to be valid. The court deter-

mined that defendant's claims in this regard were untimely and irrelevant. Given the record before us, we cannot agree.

The initial phase of the litigation concerned motions for summary disposition addressing the jurisdiction of the court and the validity of the ordinance. Once plaintiff moved to enter an order in a specific dollar amount, defendant promptly addressed whether the amount claimed reflected the true cost and whether the conduit was properly installed.[4] Further, the court could not determine whether the condition of the conduit was irrelevant without hearing evidence regarding the agreement of the parties concerning installation of the conduit and their actions pursuant to that agreement. We therefore remand to the circuit court for further consideration of this issue.

Affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

_____

[4] We further observe that it appears that although the court issued an opinion on November 25, 2002, granting plaintiff's motion for summary disposition and denying defendant's, no order was issued with respect to this decision until the June 2, 2003, order, which both granted and denied the motions as indicated, and granted additional monetary relief.