*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DUNE RIDGE SA LP, VHH SAUGATUCK
HOLDINGS LP, and PTAP TINNY LLC,

        Plaintiffs/Counterdefendants-
        Appellees,

v

CITY OF SAUGATUCK,

        Defendant/Counterplaintiff-Appellant,

and

KEN TRESTER, MONICA NAGEL, JEFF
SPANGLER, BILL HESS, MARK BEKKEN, JANE
VERPLANK, BARRY JOHNSON, and CHRIS
PETERSON,

        Defendants,

and

ELIZABETH KANTOR REVOCABLE TRUST,

        Defendant/Counterdefendant,

and

JEAN D. PROKOPEAK,

        Intervening
        Defendant/Counterplaintiff.

UNPUBLISHED
June 12, 2025
11:41 AM

No.  367059
Allegan Circuit Court
LC No.  2021-064709-CZ

DUNE RIDGE SA LP, VHH SAUGATUCK
HOLDINGS LP, and PTAP TINNY LLC,

Plaintiffs-
Counterdefendants/Appellants,

v                                                    No. 367078
                                                     Allegan Circuit Court
CITY OF SAUGATUCK,                                   LC No. 2021-064709-CZ

Defendant-Counterplaintiff/Appellee,

and

KEN TRESTER, MONICA NAGEL, JEFF
SPANGLER, BILL HESS, MARK BEKKEN, JANE
VERPLANK, BARRY JOHNSON, and CHRIS
PETERSON,

Defendants,

and

ELIZABETH KANTOR REVOCABLE TRUST,

Defendant/Counterdefendant,

and

JEAN D. PROKOPEAK,

Intervening
Defendant/Counterplaintiff.

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Plaintiffs/Counterdefendants Dune Ridge, SA, LP, VHH Saugatuck Holdings, LP, and PTAP Tinny, LLC (collectively, Dune Ridge) entered into an agreement with Defendant/Counterplaintiff the City of Saugatuck (the City) to swap parcels of land located along the Kalamazoo River. Though not expressed in the agreement itself, Dune Ridge planned to develop its resulting parcel into a high-end floating homes rental business. The Saugatuck City Council (City Council), however, subsequently enacted several ordinances regulating the use of floating homes, which disrupted Dune Ridge's plans. Dune Ridge sued, bringing both tort claims and claims based on the City's alleged breach of the parties' agreement. In response, the City brought several counterclaims against Dune Ridge.

-2-

This consolidated appeal deals with only some of the parties' various claims and counterclaims. In Docket No. 367059, the City appeals by right the trial court's order denying its motion for summary disposition of Dune Ridge's tort claims on the basis of governmental immunity. Because the City is entitled to immunity for those claims, we reverse the trial court's order denying the City's motion for summary disposition as to them. And in Docket No. 367078, Dune Ridge appeals by leave granted[1] the trial court's orders granting summary disposition in favor of the City as to part of Dune Ridge's breach-of-contract claim, dismissing Dune Ridge's promissory-estoppel claim, and denying Dune Ridge's motion for summary disposition of one of the City's counterclaims. We affirm those orders.

## I. FACTUAL BACKGROUND

Dune Ridge owns two pieces of property (the Northern Property and the Southern Property) on the Kalamazoo River in Saugatuck, Michigan. The Northern and Southern Properties were previously bisected by a narrow parcel of land (Narrow Parcel) owned by the City. In May 2018, Dune Ridge proposed to the City that they swap the City's Narrow Parcel for the southernmost portion of Dune Ridge's Southern Property, allowing Dune Ridge to own a contiguous parcel (the Park Street Property). Dune Ridge planned to develop the Park Street Property to include boat slips to house high-end floating rental homes.

The parties eventually entered into the Land Swap Agreement (LSA). This appeal primarily concerns Paragraph 1 of the LSA:

## AGREEMENT

BE IT AGREED as follows:

1. **The Transaction**. The City will transfer the [Narrow Parcel] to Dune Ridge and [Dune Ridge] will transfer the Transfer Parcel to [the City], plus the following undertakings:

   a. At closing, Dune Ridge shall pay the City the additional sum of $4000 which the City shall use for a speed limit sign/apparatus that incorporates a radar gun to show passing motorists their speed, which will be installed at the future city installed cross walk at Vine Street and Park as shown on the attached exhibit.

   b. [The] City approves and [Dune Ridge] shall install the remaining infrastructure including an eight (8) foot high privacy screen to separate commercial traffic at the Chain Ferry from the adjacent private boat slips. The City does not have jurisdiction or authority to limit docks or other structures over the water with the exception of limiting the length of docks. These structures are subject to any applicable state or federal

---

[1] *Dune Ridge, SA, LP v City of Saugatuck*, unpublished order of the Court of Appeals, entered December 20, 2023 (Docket No. 367078).

laws. A three (3) foot high open weave (6:1) fence along the current boardwalk and along future paved parking area will be permitted with the issuance of a standard fence permit. The gravel parking area will be paved and signs not to exceed 1 square foot in area indicating the parking assignments will be placed at the east side of each parking space.

c. At closing, the City shall transfer ownership of the [Narrow Parcel] to Dune Ridge.

d. Dune Ridge shall also reimburse the City for the City's reasonable attorney fees and costs incurred in drafting and negotiating this Agreement, preparing for closing and related matters, which sum shall not exceed a total of $1,000.

The initial draft of the LSA, prepared by the City's attorney, included several deed restrictions which would have prohibited any building or structure, with the exclusion of docks and piers, from being installed on the Park Street Property. Dune Ridge rejected those restrictions and engaged with the City's zoning administrator to include in Paragraph 1(b) a provision, referred to by the parties as the "Docks Clause," which stated that "[t]he City does not have jurisdiction or authority to limit docks or other structures over the water with the exception of limiting the length of docks."

The City Council approved the LSA on July 8, 2019. After the City and Dune Ridge transferred their respective parcels to each other, Dune Ridge proceeded with its plans to install four floating rental homes at the Park Street Property. Dune Ridge had the homes built and transported to a marina on the Kalamazoo River in neighboring Douglas, where they were visible from Saugatuck. Dune Ridge also constructed a privacy screen on the Park Street Property, as referred to in Paragraph 1(b) of the LSA.

On January 19, 2021, the City Council adopted a temporary moratorium on the mooring, docking, and use of floating homes in the City. Later, on July 26, 2021, the City Council enacted an ordinance to regulate activities related to floating homes (Floating Homes Ordinance). Broadly, the Floating Homes Ordinance requires licensure of floating homes; develops standards and requirements related to moorage, access, and operation of floating homes; and regulates miscellaneous matters such as relocation of floating homes, open water mooring, and the use of floating homes as short-term rentals.

When Dune Ridge eventually moved its floating homes onto the Park Street Property,[2] the City claimed that Dune Ridge was in violation of the Floating Homes Ordinance.[3] In response,

---

[2] It is unclear from the record when Dune Ridge moved the floating homes onto the Park Street Property in relation to the enactment of the Floating Homes Ordinance.

[3] The City also informed Dune Ridge that it must remove the privacy screen because it violated several local ordinances.

Dune Ridge pointed to the Docks Clause, which the City denied was legally enforceable. Dune Ridge then filed this lawsuit.

## II. PROCEDURAL HISTORY

Dune Ridge's complaint brought 12 claims against the City. The City then brought 12 counterclaims against Dune Ridge. As noted, the instant consolidated appeals pertain to only some of those claims and counterclaims.

Docket No. 367059 involves Dune Ridge's claims of fraudulent misrepresentation, silent fraud, innocent misrepresentation, and fraudulent inducement (respectively, Counts IV, V, VI and IX—collectively, the tort claims). The tort claims generally alleged that the City, through the Docks Clause, falsely represented that it did not have jurisdiction or authority to regulate structures over the water, induced Dune Ridge to enter into the LSA by making that false representation, and that Dune Ridge suffered injuries as a result. The City moved for summary disposition of the tort claims pursuant to MCR 2.116(C)(7), arguing that it was immune from tort liability under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.* (Immunity Motion). Dune Ridge responded that the City was not entitled to summary disposition on the basis of immunity because the City admitted it was not engaged in a governmental function when the alleged torts were committed, and the City's actions also fell within the proprietary-function exception to immunity. The trial court denied the Immunity Motion, finding that questions of fact remained as to whether the City was engaged in a governmental function and a proprietary function.

Docket No. 367078 involves Dune Ridge's breach-of-contract and promissory-estoppel claims (Counts I and III, respectively). With respect to its breach-of-contract claim, Dune Ridge moved for partial summary disposition pursuant to MCR 2.116(C)(10) (Dune Ridge's BOC Motion), seeking a determination that the Docks Clause was a binding and enforceable promise. According to Dune Ridge, the Docks Clause did not prohibit the City from exercising its jurisdiction and authority to regulate structures over the water, but instead functioned as a promise by the City to pay damages to Dune Ridge in the event the City did, in the future, exercise such jurisdiction and authority. Dune Ridge also argued that, to the extent the Docks Clause was not enforceable, the City breached Paragraph 6 of the LSA (the Representation Clause) which states, "**Authority of Signer.** Each signer below represents that he or she is authorized to sign and bind the respective party to the terms of this Agreement."

The City filed a cross-motion for partial summary disposition of Dune Ridge's breach-of-contract claim pursuant to MCR 2.116(C)(8) and (C)(10) (the City's BOC Motion), arguing that the claim failed because (1) entering into the Docks Clause was an ultra vires action, rendering the provision void, and (2) the Docks Clause was not a promise. The trial court granted the City's BOC Motion, concluding that the Docks Clause and the Representation Clause were unambiguous

and that neither constituted a promise, and correspondingly denied Dune Ridge's BOC Motion as to those claims.[4]

Separately, the City also moved to dismiss Dune Ridge's promissory-estoppel claim pursuant to MCR 2.116(C)(8) and (C)(10) (Promissory Estoppel Motion). Dune Ridge's promissory-estoppel claim alleged that the City made several promises that Dune Ridge relied on to its detriment. The trial court granted the Promissory Estoppel Motion, reasoning that the claim failed because the Docks Clause was not a promise and the promises Dune Ridge sought to enforce were the subject of a written, valid contract—the LSA.

Docket No. 367078 also involves one of the City's counterclaims (Counterclaim VIII) against Dune Ridge, which alleged that Dune Ridge violated the Floating Homes Ordinance, Saugatuck Code § 99.05. Dune Ridge moved for summary disposition of this counterclaim pursuant to MCR 2.116(C)(10) (Ordinance Motion), arguing that the Floating Homes Ordinance was invalid because it was preempted by the Natural Resources and Environmental Protection Act (NREPA), and because the City was not authorized to enact it under the Home Rule City Act (HRCA).[5] The trial court rejected these arguments and denied the Ordinance Motion.

The City appealed the trial court's order denying its Immunity Motion by right. Soon after, Dune Ridge filed an application for leave to appeal the trial court's rulings on the parties' BOC Motions, the Promissory Estoppel Motion, and the Ordinance Motion. This Court granted Dune Ridge's application and consolidated the two appeals.[6]

### III. THE CITY'S APPEAL (DOCKET NO. 367059)

The City argues that the trial court erred by denying its Immunity Motion because there is no genuine issue of material fact regarding the City's entitlement to governmental immunity as to Dune Ridge's tort claims. We agree.

This Court reviews the grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In reviewing a motion brought under MCR 2.116(C)(7), the court must construe the affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party and determine whether there is a genuine issue of material fact. *Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010). If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether the claim is barred by immunity is an issue of law

---

[4] Dune Ridge also claimed that the City breached the provisions of Paragraph 1(b) of the LSA related to the City's approval of the privacy screen (the Privacy Screen Clause). The trial court denied the City's summary disposition motion with respect to that claim. That aspect of the trial court's decision is not at issue in this appeal.

[5] Dune Ridge's motion also sought summary disposition with regard to its affirmative defense No. 9, which asserted that the Floating Homes Ordinance was invalid.

[6] *Dune Ridge, SA, LP v City of Saugatuck*, unpublished order of the Court of Appeals, issued December 20, 2023 (Docket No. 367078).

for the court. *Id*. at 429. "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

## A. GOVERNMENTAL FUNCTION

First, we agree with the City that there is no genuine issue of material fact that the City was engaged in a governmental function when the alleged torts occurred, and the trial court erred by concluding otherwise.

Under the GTLA, a governmental agency is generally immune from tort liability if the agency was engaged in the exercise of a governmental function. MCL 691.1407(1). A governmental function is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). "[T]his definition is to be broadly applied and requires only that there be *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged." *Ward v Mich State Univ (On Remand)*, 287 Mich App 76, 84; 782 NW2d 514 (2010) (quotation marks and citation omitted). In contrast, governmental agencies are not immune from liability for torts arising out of ultra vires activities, which are defined as activities "*not* expressly or impliedly mandated or authorized by law." *Dextrom*, 287 Mich App at 417 (quotation marks and citation omitted). Unlike the immunity granted to individuals, the immunity granted to governmental agencies under the GTLA "is based upon the general nature of the activity of its employees, rather than the specific conduct of its employees." *Margaris v Genesee Co*, 324 Mich App 111, 125-126; 919 NW2d 659 (2018) (quotation marks and citation omitted). "Thus, to determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort." *Id*. at 126 (quotation marks, citation, and alteration omitted); see also, e.g., *Ward*, 287 Mich App at 84 ("[W]e look to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred.").

The general activity underlying each of Dune Ridge's tort claims is the City's act of entering into the LSA. As the trial court acknowledged, there is no genuine dispute as to whether the City was authorized by law to negotiate and enter into the LSA. The City Charter authorizes City Council to make contracts on behalf of the City. Saugatuck Charter, § 12.7. It further provides that City Council shall have the power to acquire private property for the City "by purchase, gift, condemnation, lease, construction or otherwise . . . ." Saugatuck Charter, § 4.25. There was no evidence presented that contradicted the aforementioned provisions of the City Charter or otherwise created a genuine issue of material fact as to whether the City was authorized to enter into the LSA.

According to Dune Ridge, a fact question exists as to whether the City was engaged in a governmental function because the City itself has argued that it was not authorized to agree to certain specific provisions of the LSA—in particular, the Docks Clause and the Privacy Screen Clause. But Dune Ridge, like the trial court, improperly places the focus of the governmental-function inquiry on "the specific conduct engaged in when the alleged injury occurred" (agreeing to these particular provisions) rather than "the general activity involved" (entering into the LSA). *Ward*, 287 Mich App at 84; see also *Margaris*, 324 Mich App at 125-126. Further, an "ultra vires activity is not activity that a governmental agency performs in an unauthorized manner. Instead, it is activity that the governmental agency lacks legal authority to perform in any manner."

*Dextrom*, 287 Mich App at 419 (quotation marks, citation, and emphasis omitted). Regardless of any dispute over whether the City acted in an unauthorized manner as to certain aspects of the LSA, Dune Ridge does not maintain, nor does anything in the record suggest, that the City "lack[ed] legal authority" to enter into the LSA "in any manner." *Id*. (quotation marks, citation, and emphasis omitted).

There is no genuine issue of material fact that the City was authorized to enter into the LSA and therefore was engaged in a governmental function when the alleged torts occurred. Accordingly, the trial court erred by denying the City's Immunity Motion on this basis.

## B. PROPRIETARY FUNCTION

The trial court also erred by finding that there was a genuine issue of material fact as to whether the City was engaged in a proprietary function. Under the GTLA, a governmental agency is generally immune from tort liability unless an exception applies. One such exception is the proprietary-function exception, set forth in MCL 691.1413:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. . . .

Thus, to be deemed a proprietary function, an activity (1) "must be conducted primarily for the purpose of producing a pecuniary profit," and (2) "cannot normally be supported by taxes or fees." *Dextrom*, 287 Mich App at 421 (quotation marks and citation omitted). The parties' dispute centers around whether the City entered into the LSA primarily for the purpose of producing a pecuniary profit. Relevant considerations in determining whether a governmental agency's primary purpose was to produce a pecuniary profit include "whether a profit is actually generated," "where the profit generated by the activity is deposited and how it is spent." *Id*. (quotation marks and citation omitted).

The City points to the LSA itself in support of its assertion that the primary purpose of the agreement was to exchange real property, not to produce a pecuniary profit. We agree that the LSA, even when viewed in the light most favorable to Dune Ridge, demonstrates that the City's primary purpose in entering into the agreement was not to generate a pecuniary profit. As its plain terms make clear, the LSA's primary purpose was for the City and Dune Ridge to swap parcels of property, and nothing about the terms of that swap evidences the City did, or intended to, make a profit. Under the LSA, the City received a total of $5,000 in monetary compensation ($4,000 to install a speed limit sign at a nearby cross walk and $1,000 cover the City's legal fees in negotiating the LSA), but as Dune Ridge seems to acknowledge, the City's primary purpose in entering into the LSA was not to obtain these specific funds. Rather, the monetary compensation was nominal and incidental or secondary to the primary purpose of executing the LSA—the exchange of real property. Further, as set forth in the LSA, the money was earmarked to cover expenses related to the exchange of property, indicating that the primary purpose was not to produce a pecuniary profit. See *Coleman v Kootsillas*, 456 Mich 615, 621; 575 NW2d 527 (1998).

Dune Ridge's arguments to the contrary are merely speculative. Dune Ridge asserts the Park Street Property could result in increased tax revenue for the City, but points to no evidence in support of its assertion. Nor does Dune Ridge offer any evidence in support of its contention that the property obtained by the City in the swap could be used by the City to generate a profit. Uncontroverted testimony from City officials explained that the City's hope for the parcel was to use it to improve waterfront access for public recreation, such as fishing or kayaking, and nothing in the record indicated that the City's plan or purpose in so doing was to generate a pecuniary profit.

Dune Ridge argues that, like in *Morgan Dev LLC v City of Detroit*, unpublished per curiam opinion of the Court of Appeals, issued June 25, 2020 (Docket No. 346230), the agreement between the parties was "commercial in nature" and therefore creates a question of fact as to whether the City's primary purpose was to raise a pecuniary profit. But *Morgan* is (aside from nonbinding) distinguishable in meaningful ways. That case involved contracts the city made with a developer to develop and build on several acres of land; under those contracts, the city received over $1 million from the developer and deposited that money into the city's general fund. *Id*. at 1, 4. A panel of this Court affirmed the trial court's finding that a question of fact existed as to whether the city was engaged in a proprietary function when it entered into the contracts. *Id*. at 1-2. The contracts at issue, the panel explained, sold property for "significant amounts of money" and required the developer to improve the property, increase its value, and eventually sell the property to homeowners or businesses, ultimately providing the city with an increase in tax income in addition to the profit obtained from the purchase price. *Id*. at 4. This was in contrast, for instance, to another case in which the city offered repurchase agreements to prior owners of title, who were residents of the city, in exchange for the payment of back taxes and at minimal cost to the city; those agreements were designed primarily to benefit the city's residents and "not essentially commercial in nature." *Id*. at 3-4.

Here, unlike in *Morgan*, the exchange of land itself did not generate any profit for the City and, as discussed, there is nothing in the record to support the contention that the deal resulted in any increased tax income for the City. We find no merit in Dune Ridge's argument that the property exchange was commercial in nature or that there is otherwise a genuine issue of material fact as to whether the City's primary purpose was to produce a pecuniary profit. Accordingly, the trial court also erred by denying the City's Immunity Motion on this ground.

To summarize, in Docket No. 367059, we reverse the trial court's order denying the City's Immunity Motion. The City was plainly authorized, under the City Charter, to enter into the LSA; therefore, there is no genuine issue of material fact that the City was engaged in a governmental function. Likewise, there is no genuine issue of material fact that the City's primary purpose in executing the LSA was not to produce a pecuniary profit, and thus that the proprietary-function exception to the City's immunity does not apply. Accordingly, the City is entitled to summary disposition on the basis of immunity with respect to Dune Ridge's tort claims.[7]

---

[7] The City also argues that it was entitled to summary disposition under MCR 2.116(C)(7) because Dune Ridge failed to plead its tort claims in avoidance of immunity. See *Mack v Detroit*, 467

We turn next to Dune Ridge's appeal in Docket No. 367078.  As discussed, Dune Ridge appeals the trial court's orders resolving the parties' respective BOC Motions, the Promissory Estoppel Motion, and the Ordinance Motion.  We agree with the trial court's disposition of these motions.

The motions in question were brought under a combination of MCR 2.116(C)(8) and (C)(10).  Summary disposition under MCR 2.116(C)(8)[8] is appropriate where the nonmoving party has failed to state a claim on which relief can be granted.  *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008).  When deciding a motion brought under MCR 2.116(C)(8), the court considers the pleadings alone, accepts the factual allegations in the complaint as true, and construes those allegations in the light most favorable to the nonmoving party.  *Id*.  A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim and is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Cantina Enterprises II Inc v Property-Owners Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363105); slip op at 3-4.  "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree."  *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 5.  On review, "this Court considers the parties' documentary evidence in the light most favorable to the party opposing the motion."  *Cantina Enterprises*, ___ Mich App at ___; slip op at 4.

## A.  DUNE RIDGE'S BREACH-OF-CONTRACT CLAIM

We begin with the trial court's dismissal of Dune Ridge's breach-of-contract claim to extent it is based on the City's alleged breach of the Docks Clause and Representation Clause.  We agree with the trial court's conclusion.

The Court's goal in contract interpretation is to give effect to the parties' intent, which is determined, first and foremost, "by the plain and unambiguous language of the contract itself."  *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation marks and citation omitted).  "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of

---

Mich 186, 203; 649 NW2d 47 (2002).  Given our ultimate conclusion regarding the City's entitlement to immunity, we need not address this argument.

[8] The City's BOC Motion was brought pursuant to MCR 2.116(C)(8) and (C)(10), while Dune Ridge's BOC Motion was brought pursuant to MCR 2.116(C)(10) only.  The trial court did not identify which subrule provided the basis for its disposition of the parties' cross-motions.  In its Promissory Estoppel Motion, the City's argument that Dune Ridge's claim was barred because of the existence of a written contract was made pursuant to MCR 2.116(C)(8) and its remaining arguments as to the merits of the claim were made pursuant to MCR 2.116(C)(10).  The trial court granted the Promissory Estoppel Motion based on the City's (C)(8) argument.  Finally, Dune Ridge's Ordinance Motion was brought pursuant to MCR 2.116(C)(10).

law." *Id*. (quotation marks and citation omitted). "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning[,]" *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017), or "if two provisions of the same contract irreconcilably conflict with each other," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). However, "ambiguity is a finding of last resort." *Mayor of Lansing v Pub Serv Comm*, 470 Mich 154, 165 n 6; 680 NW2d 840 (2004). That is, "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." *Id*. at 165 (quotation marks, citation, and alteration omitted). Courts "will not create ambiguity where the terms of the contract are clear." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). "Whether a contract is ambiguous is a question of law for the court to decide." *DaimlerChrysler Corp v Wesco Distribution, Inc*, 281 Mich App 240, 248; 760 NW2d 828 (2008).

As set forth above, the Docks Clause states, "The City does not have jurisdiction or authority to limit docks or other structures over the water with the exception of limiting the length of docks." The City argues that the Docks Clause is unambiguously not a promise, but is instead simply a statement of opinion regarding the state of law. Dune Ridge argues that the Docks Clause is unambiguously a promise, but not one that prohibits the City from exercising its legislative authority. Instead, Dune Ridge's position is that the Docks Clause is a "risk-shifting" provision which reflects the City's promise to compensate Dune Ridge for damages in the event the City did exercise its legislative authority in the future. Alternatively, Dune Ridge argues that summary disposition is not warranted because there is a genuine issue of material fact as to whether the Docks Clause contains a latent or patent ambiguity.

We agree with the trial court that the Docks Clause is not ambiguous as it "fairly admits of but one interpretation"—that it is not a promise as Dune Ridge claims. *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Allen v Mich State Univ*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 358135); slip op at 13 (quotation marks and citations omitted). By its plain language, the Docks Clause does not manifest such an intention, and a court may not "look past the plain and unambiguous terms of a contract to impose an obligation on a party that has not been clearly delineated in the parties' agreement." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 549; 904 NW2d 192 (2017). The statement that the City "does not have jurisdiction or authority to limit docks or other structures over the water" may reflect the parties' shared belief regarding the state of the law at the time they entered into the LSA, but its plain terms do not impose on the City a commitment or obligation to act or refrain from acting in the manner Dune Ridge claims. And, as the trial court found, the present-tense phrasing of the Docks Clause is consistent with the conclusion that it does not purport to place future obligations on the City. See, e.g., *id*. at 548 (finding that present-tense contractual term was unambiguous as to whether defendant was obligated to perform absent existence of condition precedent).[9]

---

[9] Dune Ridge argues that, contrary to the trial court's reasoning, the use of the present tense in the Docks Clause does not mean it is not a promise. Relying on caselaw involving products-liability

Reading the Docks Clause in context with the entire LSA supports the conclusion that it is not a promise. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015) ("[C]ontractual terms must be construed in context and read in light of the contract as a whole[.]") (citations omitted). First, the LSA deals primarily with the transfer of land and contains no reference to Dune Ridge's future development plans. While, as Dune Ridge argues, some provisions contemplate the construction of additional infrastructure, like a privacy screen and cross-walk with radar gun, none of these provisions refer to Dune Ridge's plan to build floating homes on the Park Street Property or any other structure over the water. Further, the parties used the word "shall" throughout the LSA to impose affirmative obligations. For instance, the parties agreed that "Dune Ridge shall pay the City the additional sum of $4,000," "the City shall transfer ownership of the City Narrow Parcel to Dune Ridge," and "Dune Ridge shall also reimburse the City for the City's reasonable attorney fees and costs." Similarly, with regard to closing costs, the LSA stated: "Given that the City is exempt from property taxes for the Transfer Parcel there shall be no payment or apportionment of property taxes for the Transfer Parcel at closing." As these provisions reflect, when the parties intended to impose an obligation to act or not act—including when based upon their stated understanding of the law—they used specific language to make that clear. The Docks Clause lacks such language.

Dune Ridge's arguments to the contrary are not persuasive. Dune Ridge argues that the Docks Clause is unambiguously a promise because it is listed among other matters following the phrases "AGREEMENT," "BE IT AGREED," and "plus the following undertakings." But we do not see how the placement of the Docks Clause within in the parties' list of "undertakings" renders it a promise. The "following undertakings" are presented in a list of five subparagraphs lettered "a" through "e," and each subparagraph contains at least one thing the parties "shall" or "will" do. The Docks Clause is not a standalone phrase in its own subparagraph, but is instead contained in the middle of one of these subparagraphs. Accordingly, to the extent "undertaking" is considered synonymous with a promise, each listed subparagraph includes at least on such plainly stated promise, and there is nothing to suggest that everything in each subparagraph must be a promise in itself—particularly where, as with the Docks Clause, its plain language indicates otherwise. Alternatively, Dune Ridge argues that, because the Docks Clause is included in the list of "undertakings," there is a patent ambiguity and therefore a question of fact as to whether the Docks Clause constitutes a promise. As noted, whether a contractual term is ambiguous is a question of law for the court to decide, *DaimlerChrysler Corp*, 281 Mich App at 248, and for the reasons

---

claims and guaranty contracts, Dune Ridge argues that the Docks Clause is akin to a warranty contract, which is often phrased in the present tense but constitutes a promise. See, e.g. *Murphy v Gifford*, 228 Mich 287, 299; 200 NW 263 (1924). But, as the City argues, the Docks Clause does not contain language akin to a warranty, unlike the cases cited by Dune Ridge. Further, because a guaranty contract "is a special kind of contract," courts "must approach with caution a claim that the parties have formed a guaranty contract." *Bandit Indus, Inc v Hobbs Intern, Inc*, 463 Mich 504, 511-512; 620 NW2d 531 (2001). Dune Ridge has not explained how the LSA could be considered a guaranty contract or how caselaw regarding guaranty contracts is otherwise applicable. Ultimately, Dune Ridge acknowledges that the use of the present tense is at least potentially relevant in interpreting the meaning of a contractual term; our analysis here does not require more, and for the reasons discussed above, we find that the use of that tense in this case supports the conclusion that the Docks Clause is unambiguously not a promise.

-12-

discussed, the Docks Clause is unambiguously not a promise as a matter of law; we see nothing in the list of "undertakings" that would warrant a different conclusion or create a genuine issue of material fact in that regard. The case relied on by Dune Ridge, *State Bank of Standish v Curry*, 442 Mich 76; 500 NW2d 104 (1993), deals with the scope of an oral promise for purposes of a promissory-estoppel claim and is inapplicable here.

Dune Ridge also relies generally on canons of contractual interpretation, such as the canon that "contracts must be construed so as to give effect to every word or phrase as far as practicable." *Klapp*, 468 Mich at 467 (quotation marks and citations omitted). But Dune Ridge's argument fails to overcome the well-established rule that courts must interpret and enforce unambiguous language as written. *Kendzierski*, 503 Mich at 311. And here, to read the Docks Clause as the promise Dune Ridge claims would be "to impose an obligation on [the City] that has not been clearly delineated in the parties' agreement." *Van Buren*, 319 Mich App at 549. Courts disfavor judicial avoidance of contractual obligations because of imprecise language, *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 18; 824 NW2d 202 (2012), but this is not a case of imprecise language; rather, the language of the Docks Clause as plainly written does not impose an obligation on the City as Dune Ridge claims.

In the alternative, Dune Ridge argues that the Docks Clause contains a latent ambiguity and thus presents a question of fact for the jury to decide. "A latent ambiguity . . . is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005) (quotation marks and citation omitted). Detection of a latent ambiguity requires consideration of factors outside the instrument itself, and so extrinsic evidence is admissible to prove the existence of the ambiguity as well as to resolve any ambiguity proven to exist. *Id*.

To support its claim of latent ambiguity, Dune Ridge relies primarily on an affidavit submitted by Paulus Heule, Dune Ridge's principal, in which he avers:

> When I negotiated and signed the [LSA] on behalf of Dune Ridge, it was my intention and belief that the [Docks Clause] to be (sic) a clear and definite promise to Dune Ridge. It was a clear and definite promise or undertaking that the City would not regulate structures over the water . . . at Dune Ridge's property, or else the City would be liable for breach of contract.

But Heule's affidavit fails to demonstrate a latent ambiguity because "one party's subjective understanding of what [a] contract mean[s] is plainly insufficient to create a latent ambiguity." *Stryker Corp v Nat'l Union Fire Ins Co of Pittsburgh*, 842 F3d 422, 428 (CA 6 2016) (quotation marks and citation omitted) (applying Michigan contract law); see also *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004) (explaining that "the unilateral subjective intent of one party cannot control the terms of a contract"). As discussed, the plain language of the Docks Clause unambiguously does not constitute the "clear and definite promise" Heule maintains in his affidavit, but at most reflects the parties' shared belief regarding what the state of law was at the time they entered into the LSA. And indeed, in his earlier deposition, Heule testified that he understood the Docks Clause to be the City's representation of what it believed the law to be. Cf. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001) ("[P]arties may

not contrive factual issues merely by asserting the contrary in an affidavit after having given damaging testimony in a deposition.") (quotation marks and citations omitted).[10]

Finally, Dune Ridge argues that if the Docks Clause is not enforceable, either because it is not a promise or because it is an unenforceable promise, the City necessarily breached the LSA's Representation Clause because the LSA's signers could not, in fact, "bind the [City] to the terms of the [LSA]." As discussed, however, the City, via its agents, generally had authority to enter into the LSA; the Docks Clause was part of that agreement, and was unambiguously not a promise. The determination that the Docks Clause is not a promise does not command the conclusion that the signers of the LSA lacked authority to bind the City to the LSA's terms, or create a genuine factual dispute in that regard.

Accordingly, the trial court was correct to grant summary disposition in favor of the City on Dune Ridge's claims that the City breached the Docks Clause and Representation Clause, and to deny Dune Ridge's motion for summary disposition as to the enforceability of the Docks Clause.

## B. DUNE RIDGE'S PROMISSORY-ESTOPPEL CLAIM

Next, we turn to the trial court's order granting the City's Promissory Estoppel Motion and dismissing Dune Ridge's promissory-estoppel claim pursuant to MCR 2.116(C)(8). The doctrine of promissory estoppel provides a remedy for parties who reasonably rely on a clear and definite promise. *State Bank*, 442 Mich at 82-84. We agree with the trial court that Dune Ridge's claim fails as a matter of law because a claim for promissory estoppel is not viable when a written contract exists between the parties that covers the same subject matter. See generally, e.g., *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 93; 468 NW2d 845 (1991) (explaining that "[a]n implied contract cannot be enforced where the parties have made an express contract covering the same subject matter"); *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 482-483; 986 NW2d 427 (2022) (holding that the plaintiffs' implied-contract theory failed because the express written agreements between the parties governed the same subject matter as the equitable claims).

Here, Dune Ridge's promissory-estoppel claim is premised on four alleged promises that are each the subject of a provision of the LSA: (1) that Dune Ridge's development plans were subject only to state and federal law, (2) that the City did not have authority or jurisdiction to regulate structures over the water, (3) that Dune Ridge was approved and obligated to build the privacy screen, and (4) that the City had the authority and ability to enter into the LSA. Accordingly, the trial court properly dismissed Dune Ridge's promissory estoppel claim as a matter of law.

Dune Ridge does not dispute that the alleged promises are the subject of the LSA. Instead, it argues that the above principle applies only where there is a legally valid written contract and that, because the City argued that the Docks Clause was unenforceable, Dune Ridge should be

---

[10] Because the trial court found that the Docks Clause was unambiguously not a promise, it did not address the arguments raised in Dune Ridge's BOC Motion regarding the enforceability of the Docks Clause as a promise. Likewise, we need not address those arguments on appeal.

allowed to pursue its promissory-estoppel claim in the alternative. But the City's challenge to the enforceability of one provision of the LSA does not mean that the LSA is not a legally valid contract. Indeed, Dune Ridge has acknowledged that the LSA is legally valid. "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *Milford Hills Props, Inc v Charter Twp of Milford*, unpublished per curiam opinion of the Court of Appeals, issued September 2, 2021 (Docket Nos. 353249; 353489), p 8 (quotation marks and citations omitted); see also *Carey v Foley & Lardner, LLP*, unpublished per curiam opinion of the Court of Appeals, issued August 9, 2016 (Docket No. 321207), p 6 (explaining that alternate claims for breach of contract and promissory estoppel cannot be brought "where the performance that constitutes the consideration for the contract is the same performance that demonstrates detrimental reliance in a promissory estoppel claim").[11] Though not an enforceable promise as Dune Ridge claims, the Docks Clause remains part of a valid, written agreement—as do the other alleged promises identified by Dune Ridge— and Dune Ridge has failed to demonstrate that its promissory-estoppel claim can go forward nonetheless.

Accordingly, the trial court properly granted the City summary disposition as to Dune Ridge's promissory-estoppel claim.

### C. THE CITY'S FLOATING-HOMES-ORDINANCE COUNTERCLAIM

Lastly, we turn to Dune Ridge's appeal of the trial court's order denying Dune Ridge's Ordinance Motion. As discussed, the Ordinance Motion deals with the City's Counterclaim VIII, alleging that Dune Ridge violated the Floating Homes Ordinance. Dune Ridge moved for summary disposition of the counterclaim on two grounds: (1) the Floating Homes Ordinance is preempted by Subchapter 5 of NREPA, entitled "Watercraft and Marine Safety,"[12] and (2) the City lacked authority to enact the Ordinance under the HRCA. We agree with the trial court's denial of this motion.

To start, we do not find merit in Dune Ridge's preemption argument. "[A] municipal ordinance is preempted by state law if 1) the statute completely occupies the field that the ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997). Dune Ridge's preemption argument is based solely on field preemption. Our Supreme Court has identified four "guidelines for determining whether a statute has preempted municipal ordinances by completely occupying the field of regulation": (1) "where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted"; (2) "pre-emption of a field of regulation may be implied

---

[11] Unpublished opinions are not binding, MCR 7.215(C)(1), but may be persuasive, "especially when the unpublished case involves similar facts or when little published authority exists that is on point." *Miclea v Cherokee Ins Co*, 333 Mich App 661, 670; 963 NW2d 665 (2020).

[12] Subchapter 5 had three parts: Part 801 deals with "marine safety," MCL 324.80101 *et seq.*; Part 802 deals with personal watercraft, MCL 324.80201 *et seq.*; and Part 803 deals with "watercraft transfer and certificate of title," MCL 324.80301 *et seq.*

upon an examination of legislative history"; (3) "the pervasiveness of the state regulatory scheme may support a finding of pre-emption" (though "is not generally sufficient by itself to infer pre-emption"); and (4) "the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." *Id*., quoting *People v Llewellyn*, 401 Mich 314, 323-324; 257 NW2d 902 (1977) (quotation marks omitted). Dune Ridge does not argue that the first of these four considerations—express preemption—is applicable here. And contrary to Dune Ridge's position, the remaining three considerations do not support a finding of field preemption, either.

As to the second of the four considerations, the legislative history of Subchapter 5 of NREPA, Dune Ridge points to the fact that Part 801, the Marine Safety Act, has expanded from four pages in 1959 to 76 pages and 100 different sections today. But we fail to see how the expansion of this subpart, on its own, demonstrates the legislative intent to preempt that Dune Ridge claims. Dune Ridge, for instance, does not argue (and we see nothing to indicate) that, in expanding this subpart, the Legislature took concerted action to replace a simple regulatory regime with a large, comprehensive statutory framework, as opposed to simply increasing in the amount of regulation over time. Cf. *Cascade Twp v Cascade Resource Recovery, Inc*, 118 Mich App 580, 587; 325 NW2d 500 (1982) (holding that the Legislature intended to preempt the field of hazardous waste management by enacting a statute that replaced "ten sections of its much simpler predecessor . . . with a comprehensive 51-section statutory framework designed to regulate all aspects of hazardous waste disposal"). Nor does Dune Ridge identify anything else about the legislative history of Subchapter 5 that would support its claim of preemption.

As to the third consideration, the parties do not dispute that Subchapter 5 pervasively regulates watercraft and marine safety. But as the parties also do not dispute, Subchapter 5 is silent as to the regulation of floating homes specifically. And, even assuming that watercraft and marine safety encompassed the regulation of floating homes, Dune Ridge does not point to any provision of the Floating Homes Ordinance that conflicts with any provision of Subchapter 5. As our Supreme Court explained in *Detroit v Qualls*, 434 Mich 340, 362-63; 454 NW2d 374 (1990) (quotation marks, citation, and ellipsis omitted):

> The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective.

See also *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, 318 Mich App 338, 353-354; 897 NW2d 768 (2016) (concluding that although the state pervasively regulated firearms, it did not preempt the field of firearm regulations in schools, and school regulation that did not conflict with state statutes was "unobjectionable"). We do not find support for field preemption in this consideration.

And as to the final consideration, Dune Ridge has failed to show that the nature of floating homes requires exclusive regulation by the state to achieve the uniformity necessary to serve the state's purpose or interest. "[W]here the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld." *Llewellyn*, 401 Mich at 324-325. The City persuasively argues that the nature of floating homes calls for regulations adapted to local conditions because without local regulation, individuals could evade local safety standards, rental requirements, zoning ordinances, and aesthetic controls that would otherwise prohibit such a structure if it were located on land. See, e.g., *Miller v Fabius Twp Bd*, 366 Mich 250, 259; 114 NW2d 205 (1962) (finding that local ordinance which further limited the hours for water skiing was not preempted by state law and noting that there were "peculiar circumstances that [were] local in character—such as the number of boat users on the lake; the amount of fishing on the lake; the congestion and conflict between fisherman and water skiers; [and] the location of the lake to densely populated areas," which were best regulated at the local level).

In arguing that the nature of floating homes demands exclusive regulation by the state, Dune Ridge relies largely on cases involving other areas of water regulation in which the courts found the need for uniformity in regulation. In *City of Brighton v Twp of Hamburg*, 260 Mich App 345, 355-356; 677 NW2d 349 (2004), for example, this Court found that the state's control of pollution entering the state's interconnected waterways "would be substantially undermined by a Balkanized patchwork of inconsistent local regulations" and therefore demanded exclusive state regulation. But while the state's interconnected waterways call for uniform regulation in the area of pollution, Dune Ridge fails to meaningfully explain—and we fail to see—how variations in local regulation of floating homes would similarly threaten to undermine some overarching state interest. Dune Ridge also points to various sources which cite the state's interconnected navigable waters as a reason for uniform regulation of boating, arguing that inconsistent regulation would cause uncertainty and confusion. But floating homes are moored and, unlike traditional boats, do not, by their nature, travel through different municipalities and jurisdictions. Michigan's interconnected navigable waters do not, in the context of floating homes, call for uniformity in regulation such that local regulation of them should be deemed preempted.

In sum, Dune Ridge has failed to show that, through Subchapter 5 of the NREPA, the Legislature intended to preempt the field of regulation with regard to floating homes. We see no error in the trial court's rejection of Dune Ridge's arguments to that effect and its corresponding determination that the Floating Homes Ordinance is not preempted by state law.

Dune Ridge also argues that the Floating Homes Ordinance is invalid because the City lacked authority to enact the Ordinance under the HRCA. MCL 117.4h provides, in pertinent part:

> Each city may in its charter provide:
>
> * * *
>
> (4) Water Course. For the use, control and regulation of streams, waters and water courses within its boundaries, but not so as to conflict with the law or action thereunder where a navigable stream is bridged or dammed; or with riparian or littoral rights without their corporate limits.

-17-

According to Dune Ridge, the Floating Homes Ordinance conflicts with riparian rights outside the City's corporate limits and is therefore invalid. As an initial matter, MCL 117.4h(4) applies the regulations of "streams, waters and water courses" that "[e]ach city may in its charter provide." Dune Ridge, however, cites no legal authority demonstrating that this statutory provision applies the Floating Homes Ordinance, which is undisputedly not a part of the City's charter.

Regardless, we do not see merit in Dune Ridge's argument. According to Dune Ridge, the Floating Homes Ordinance applies to "an expansive amount of boats," and thereby improperly interferes with riparian rights. But the Ordinance is plainly not as broad as Dune Ridge argues. In defining the term "floating home," the Ordinance makes clear that it is meant to reach boats or vessels "designed or used primarily for living or as a house, domicile or dwelling rather than for water transport or recreational purposes." Floating Homes Ordinance, Saugatuck Code, § 99.03(1). Correspondingly, the Ordinance specifies eleven factors that an enforcing officer is required to consider when determining if a "boat, vessel or float" is in fact a "floating home" under the Ordinance, which collectively indicate that conventional boats, sailboats, and other vessels do not fall within that definition. Id. at § 99.03(2). And the Ordinance's other terms similarly make clear that its intent is to regulate the "permanent or semi-permanent" use of floating homes "as dwellings or structures of habitation" within the City, rather than to control temporary waterborne traffic passing through the City, as Dune Ridge suggests. Id. at § 99.01. For instance, in prohibiting floating homes from being "anchored, kept, or moored away from land in the open water overnight," the Ordinance specifies that this prohibition does not apply "when a floating home is under power in the open water, being used temporarily for recreation or being moved to another lawful location." Id. at § 99.07(D). Even assuming MCL 117.4h applies, Dune Ridge has failed to show that the Ordinance's terms and scope of regulation unduly "conflict . . . with riparian or littoral rights without [the City's] corporate limits," so as to run afoul of that statutory provision.

The trial court correctly rejected Dune Ridge's arguments that the Floating Homes Ordinance was preempted by the NREPA and that the City lacked authority to enact the Ordinance under the HRCA. Accordingly, the trial court did not err by denying Dune Ridge's Ordinance Motion.

## V. CONCLUSION

In Docket No. 367059, we reverse the trial court's order finding that genuine issues of material fact existed as to whether the City was engaged in a governmental or proprietary function. The City is entitled to immunity on Dune Ridge's Counts IV, V, VI and IX. In Docket No. 367078, we affirm the trial court's orders granting the City's BOC Motion and Promissory Estoppel Motion and the trial court's orders denying Dune Ridge's BOC Motion and Ordinance Motion.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

-18-